

United States District Court
For The Eastern District Of Virginia

E.D. Virginia, Alexandria Division

*Plaintiff:* Linda Wagner )
) Case # 1:15-cv-01353
vs. ) LMB / IDD
) ACPA (Cybersquatting), Extortion,
*Defendant:* Lindawagner.com (domain name) ) Interference of "bad faith" intent in vested
Respondent: Eweb Development Inc. ) strive.

Table of Contents:

Pg. 2:------------------------------------------------ Authorities.

Pg. 3:------------------------------------------------ Jurisdiction.

Pg. 4:------------------------------------------------ Complaint.

Pg. 5:------------------------------------------------ Argument.

Pg. 6:------------------------------------------------ Relief Sought

(1)

AUTHORITIES:

*Anti-cybersquatting Consumer Protection Act (ACPA), 15 USC §1125(D) et al.*

*LANHAM act [15 U.S.C. § 1125 (7) (d) (1)(b)]*

*NBC Universal vs. Junak Kwon (Eastern District, VA Cir. 2005)*

*Bosley Medical Institute v. Kremer,* 2005 USAppLexis 5329 (9th Cir. 2005).

*Ford Motor Co. v. Catalanotte*, 342 F3d 543 (6th Cir. 2003)

*Nissan Motor Co. v. Nissan Computer Corp.*, 61 USPQ2d 1839 (C.D. Cal. 2002)

*Storey v. Cello Holdings, LLC.*, 347 F3d 370 (2d Cir. 2003)

------------------------------------------------------------------------------

(2)

JURISDICTION:

1. That this Court holds Jurisdiction over Rem proceedings under CPA, a type of action provided under

2. U.S.C. 1125(D)(2) which allows under certain circumstances, a plaintiff to directly proceed against a

3. domain name to enforce ownership rights in. [See NBC.Universal vs. Junak Kwon 2003], in which

4. the Court allowed NBC Universal to proceed in this manner because it would have been impossible

5. for the Court to exercise personal jurisdiction over the defendant in Korea. In this instance the

6. respondent is a Canadian entity. Further the domain in question is a "dot com" domain classed as

7. "TLD" (Top Level Domain) whom"VERISIGN INC.", located in Reston, VA. (Exh 3) is the

8. authoritative Registry for the "dot com" "dot net" and generic name domains. That this fact allows

9. for jurisdiction to lie with this Court. That it is not possible for the plaintiff to exercise personal

10. jurisdiction over respondent due to respondent being either a Canadian resident, citizen or entity.

11. "In rem" proceedings can commence in a judicial district "in which the domain name registrar,

12. domain name registry, or other domain name authority that registered or assigned the domain name

13. [at issue] is located." (ACPA), 15 USC§1125(d)(2)(c)). Lastly, *An "in rem" action can also be used*

14. *to address violations of 15 USC §1125(a) (infringement of unregistered mark)*. The main focus

15. here, however, is cybersquatting and jurisdiction lies with this Court nevertheless because of

16. *Rem action* necessarily in this instance.

17. In "NBC vs. Kwon" the court rejected three arguments put forth by "Kwon" attempting to

18. disqualify this Court from jurisdiction, one of which pertains to the complaint herein. "Kwon"

19. argued that this Court lacks jurisdiction in "Rem" provisions under ACAP (15U.S.C. 1125(d)),

20. charging the provision is only for cybersquatting claims, (which is in part of the complaint herein),

21. He alleged that the Court therefore could not exercise personal jurisdiction. (in this instance

22. BOTH sides also agree that personal jurisdiction is not possible). The Court held, because

23. of the circumstances jurisdiction was in fact allowed under the "rem" provision. In this instance the

(3)

24. charges also goes further than cybersquatting and includes "dilution" as the plaintiff's name is

25. very well known in her home state and to date she has sold more than 300 homes. Her ongoing

26. strive is affected adversely by the "bad faith" conduct of respondent that caused the sprung of

27. "hindrance" to a good degree by preventing plaintiff her right to operate her trademark and birth

28. given name in a "good faith" fashion, by preventing her to continue using the domain in dispute

29. herein. Further, this Court also ruled, [that] *abstention by a federal court is only warranted in*

30. *extremely rare circumstances. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 821, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).*


COMPLAINT:

31. Now comes the plaintiff "Linda Wagner" in this case charging that respondent "EWEB

32. DEVELOPMENT INC." has committed a violation and is committing an ongoing violation

33. against her goodwill and economic strive. In short the violation is categorized specifically under

34. ACAP (15U.S.C. 1125(d)) charging that respondent is "cybersquatting" "holding for ransom"

35. and attempting to "extort" thousands of dollars from plaintiff pertaining to the domain name

36. "lindawagner.com". That said domain name is in fact the "birth given name" and common law

37. Trademark, of which plaintiff has been trading with since in and around (1985). That plaintiff also

38. in fact OWNED this very domain from in and around (2003) to in and around late (2008).

39. That the record will show, (a) that plaintiff is an independent Real Estate Agent to which she

40. operates strictly under her personal name that reflects the domain name in question. (b) That

41. plaintiff failed to renew the domain after a severe plunge in the housing market to which plaintiff

42. suffered like many others financially which led to plaintiff neglecting briefly to renew the domain

43. disputed herein. (c) That plaintiff created a following with said domain for quite a substantial

44. number of years.(d) That shortly after plaintiff failed to renew said domain, respondent, who

45. is a resident entity from CANADA, acted in "bad faith" by purchasing the domain with the sole

46. intention to cybersquat and extort money from plaintiff by holding for ransom said domain.

47. (e) That respondent's birth name is not the plaintiff's name. (f) That respondent has never TRADED

48. nor used said domain as a website, but rather created a page that offers contact information to

49. "purchase and develop" said domain. (exhibit 1), (f) That plaintiff, not knowing any better actually

50. offered respondent five hundred US dollars for said domain which would normally have cost

51. her around (two) dollars per year from a legitimate domain re-seller, such as "GODADDY.com"

52. (Exhibit 2), and that respondent "turned plaintiff down flat" on her five hundred dollar offer and

53. demanded instead five thousand U.S dollars. (g) That plaintiff "gave up" believing there was

54. "nothing she could do to get her domain back" That in early 2015 plaintiff further filed a

55. business license for her own brokerage start-up firm named "Linda Wagner Properties" (Exhibit 4)

56. in the state of Tennessee, and again attempted to persuade respondent to sell her the domain in

57. question herein for less monies and again respondent refused instead demanding thousands of

58. dollars. (Exhibit 4), 5(a-f) (h)That the record will show that up to this point respondent has been sitting on

59. said domain all this time solely for the purpose to cybersquat and hold for ransom, and to extort

60. monies from plaintiff to what is rightfully hers. (i) That this is a "bad faith" course of conduct by

61. respondent and done so "willingly" "knowingly" with "bad faith" intent and without remorse.

62. (j)That plaintiff used both her birth name AND the domain name in question as her Trademark until

63. respondent recklessly interfered. (j) That even after defendant was made aware to the importance

64. of plaintiffs economic strive being affected in a severe adverse way due to his ongoing conduct,

65. respondent remains defiant, declaring that he "bought" said domain and thus makes him the "legal

66. owner", forcing plaintiff to plead with this Court for relief.

ARGUMENT:

67. A person's name, is a legitimate claim if the name is used as a Trademark. See *Nissan Motor*

(5)

68. *Co. v. Nissan Computer Corp.*, 61 USPQ2d 1839 (C.D. Cal. 2002), where the Company is named

69. after the person's actual name. In this case the plaintiff exercised the same right, using her name

70. as her company being an independent Real Estate Agent. Respondent on the other hand, has

71. NOT used the name for anything other than what the charges are outlining in this complaint

72. (Exh 1.) The respondent falsely believes, he has a "legal right" to the domain simply because he

73. "bought it" SEE *Storey v. Cello Holdings, LLC., 347 F3d 370 (2d Cir. 2003), (The right to use a*

74. *domain name is not fixed at the time of registration, "instead, it is contingent on [the] ongoing*

75. *legal use of that domain name."* In determining whether a particular domain name was registered

76. or used in good faith, the use made of the domain name prior to the commencement of the parties'

77. dispute is particularly important. Respondent has no relief in this (Exh 1.) Here, respondent has

78. demonstrated *(a) An offer to transfer the domain name to plaintiff for financial gain where the*

79. *domain has not been used by respondent in connection with a bona fide offering of goods or*

80. *services. (b)Respondent's intent to divert consumers from the plaintiffs mark to a site that harms*

81. *the good will represented by the mark, whether for commercial gain, or to tarnish or disparage*

82. *the mark.* Whereby plaintiff claims her mark to be famous locally, as one would expect when the

83. use was since, (1985) and respondent snatching the domain to the mark, KNOWING plaintiff or

84. other namesakes may want the domain desperately, and then in "bad faith" attempts monetarily

85. gain by the act of EXTORTION. SEE *Ford Motor Co. v. Catalanotte*, 342 F3d 543 (6th Cir. 2003).

RELIEF:

86. Plaintiff now is petitioning this Court to order the domain in dispute herein "lindawagner.com"

87. either be transferred to her without delay or to order the CANCELLATION of the registration of

88. respondent on the domain. This would allow plaintiff to re-register it in her name, and for her

89. ongoing use of "good faith". That plaintiff's history to the use of her trade name "Linda Wagner"

90. justify such action. That respondent be reprimanded as having NO legitimate grounds to hold

91. domains for ransom in this "bad faith" scheme of Extortion. That respondent is displaying

92. particularly aggressive "bad faith" conduct attempting to extort thousands of dollars

93. from plaintiff, and has hold for ransom the domain for almost 5 years, suggesting "exceptional"

94. circumstances. That these "exceptional" circumstances warrants plaintiff to monetary losses to the

95. least of (twenty five thousand US dollars) due to referrals and past clients lost, that could most

96. likely have attempted to reach her through her domain "lindawagner.com" which she owned and

97. operated for around (5) years. That it is indeed a blemish on her success and strive when clients

98. and referrals can not reach her through the domain in dispute herein. That a search of the domain

99. lands on a rather peculiar page of respondent attempting to sell it (Exh 1.), suggesting that plaintiff

100. is no longer operational as a Real Estate Agent, and that subsequent searches are not performed

101. because thereof. That she also used the domain in dispute herein as her Trademark in conjunction

102. with her birth given name, which in this instance, is one and the same name (mark), as the domain,

103. with the exception of the added "dot com". That the defiant nature of respondent be noted

104. by ordering him to pay ALL Court fees and legal fees pertaining to this complaint. That even

105. so plaintiff does not hold a registration for her Trademark, the Court acknowledges protection of

106. her Trademark under Judicial common law and common law protection as well as the *LANHAM*

107. *act 15 U.S.C. § 1125 (7) (d) (1)(b)*, that provides therein. That further it shows to be obvious that

108. the domain disputed herein, is plaintiff's actual birth given name namely "Linda Wagner", which

109. she has so used since (1985) as an independent Real Estate Agent in the State of Tennessee.

110. That evidence will show, the ongoing conduct of cybersquatting, greed and complete dis-concern

111. by respondent, causing plaintiff's invested strive to be affected in an adverse fashion.

112. That this conduct denies plaintiff of her legal and moral rights and express violation by

respondent. Therefore relief is utmost necessary (87).

So pleaded and entered this 12th day of October 2015.

(7)

By Plaintiff. (Pro Se Litigant)

Date Oct 12, 2015

Linda Wagner (Pro Se)
1624 Rachels Retreat Cir
Hermitage, TN 37076

## Certificate Of Service

That I Linda Wagner (Plaintiff) has personally served a copy of this complaint and all amended documents thereto via respondent's COUNSEL, to reach respondent, by placing a sealed envelope with said content in the mail and mailing it by U.S Registered Mail to the recipient address below:

>Zak Muscovitch (Muscovitch Law P.C.)
>446 Eglinton Avenue West.
>Toronto, Ontario, Canada M5N 1A5

Date Oct. 12, 2015

Linda Wagner (Pro Se)
1624 Rachels Retreat Cir
Hermitage, TN 37076

## AFFIDAVIT TO TRUTH

I, Linda Wagner, hereby attest and swear that all the foregoing statements regarding the complaint herein, to be true and to the best of my understanding and ability, as I understood it at the time of admission of this complaint herein. That I truly believe my rights are being violated and my invested strive being affected in an adverse way.

That I understand the consequences of false and/ or misleading statements to this Court.

That I pray for relief with a clear conscience that I am acting in the interest of law and justice, by admitting the complaint herein to this Court so that faith can be restored in my invested strive .

So sworn and attested this _____12th_____ day of October 2015 by my hand.


Date  Oct 12, 2015

Linda Wagner (Pro Se)
1624 Rachels Retreat Cir
Hermitage, TN 37076